IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**CITY OF ALBUQUERQUE**,
a municipal corporation,

      Plaintiff,

   vs.                            No.   **CIV 08-80 MCA/LFG**

**INTEGRITY PROGRAM, LLC**,

      Defendant.


## MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before the Court on Defendant *Integrity Program, LLC's Motion to Dismiss or, in the Alternative, Motion to Strike* [Doc. 6] filed on January 28, 2008, and *Plaintiff's Motion to File Amended Complaint* [Doc. 24] filed on May 1, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Defendant's motion without prejudice and grants Plaintiff's motion for the reasons set forth below.

## I.     BACKGROUND

On December 18, 2007, Plaintiff City of Albuquerque filed a *Verified Complaint for Abatement of Public Nuisance, Prima Facie Tort, and Equitable Relief* [Doc. 1-2] against Defendant Integrity Program, LLC, in the Second Judicial District Court for the County of Bernalillo, State of New Mexico. Plaintiffs' *Verified Complaint* alleges that Defendant is

unlawfully engaged in the business of selling magazines or other merchandise through door-to-door solicitation of individuals at their residences in the City of Albuquerque.

Plaintiffs further allege that Defendant lacks a permit to engage in such door-to-door solicitation pursuant to the City of Albuquerque's Business Solicitations Ordinance, and that two of Defendant's agents, Travis Rowley and Michael Lee, murdered two Albuquerque residents, Tak Yi and Pung Yi, on December 4, 2007, after gaining access to their residence under the pretext of conducting door-to-door solicitation on Defendant's behalf. According to Plaintiff's *Verified Complaint*, Defendant does not "conduct background investigations or otherwise exercise due diligence" with respect to their selection of agents to act on the company's behalf. In addition, Plaintiff alleges that Defendant's selection and training of agents allows for, or even encourages, other threats to the safety and privacy of the Albuquerque residents who are subjected to such door-to-door solicitations, including misrepresentation, "dishonest sales practices," and "high pressure sales techniques." [Doc. 1-2.]

On January 22, 2008, Defendant removed this action to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1441 on the grounds that there is complete diversity of citizenship between the original parties and the amount in controversy exceeds $75,000, as required under 28 U.S.C. § 1332. [Doc. 1.] Six days later, on January 28, 2008, Defendant filed a *Motion to Dismiss or, in the Alternative, Motion to Strike* [Doc. 6] asserting that Plaintiff's *Verified Complaint* is subject to dismissal under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted, and,

2

in the alternative, that certain portions of Plaintiff's pleading should be stricken under Fed. R. Civ. P. 12(f) because they are "scandalous or set out in needless detail." [Doc. 6, 7.]

On March 18, 2008, the assigned Magistrate Judge entered a *Scheduling Order* [Doc. 17] and an *Order Adopting Joint Status Report* [Doc. 18] which, among other things, set a deadline of May 1, 2008, for Plaintiff to "join additional parties and amend the pleadings." On the latter date, Plaintiff filed a *Motion to File Amended Complaint* [Doc. 24] seeking to add more Defendants and a new cause of action for negligent hiring, supervision, or retention. Plaintiff's proposed *Amended Complaint* [Doc. 24-2] also removes the cause of action for prima facie tort and several of the allegations which Defendant claims to be scandalous under Fed. R. Civ. P. 12(f), thereby rendering portions of Defendant's *Motion to Dismiss* and *Motion to Strike* moot. Nevertheless, Defendant contends that Plaintiff's motion to amend its pleading should be denied because the proposed amendments would be futile.

## II.   ANALYSIS

### A.   Standard of Review

A complaint may be amended "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, such an amendment requires leave of the Court or written consent of the adverse party. When, as here, a party moves to amend within the period of time allowed by the Court's scheduling orders pursuant to Fed. R. Civ. P. 16, such "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). It is within the Court's discretion, however, to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). The standard for determining whether a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) was recently clarified in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

A claim is subject to dismissal under this rule if it does not "possess enough heft to sho[w] that the pleader is entitled to relief." Id. at 1966 (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citation and footnote omitted). But the standard of review articulated in Twombly still requires the Court to view the well-pleaded factual allegations in the light most favorable to Plaintiff and to construe all reasonable inferences in its favor. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225,1236 (10th Cir. 2007).

**B.      Defendant's Challenge to the Constitutionality of the Ordinance**

Defendant contends that Plaintiff cannot prevail on any of its claims as a matter of law because the permitting requirements in the City of Albuquerque's Business Solicitations Ordinance amount to a prior restraint on commercial speech in violation of the First Amendment to the United States Constitution.  To support the contention that it is proper to resolve this issue on the basis of the pleadings alone, Defendant cites the proposition that:

> [A] first amendment challenge to the *facial* validity of a statute is a *strictly legal* question; it does not involve the application of the statute in a specific factual setting . . . .  *In determining the facial validity of a statute or ordinance the court does not consider any specific type of conduct.  Rather, the facial validity of a statute is decided by reference to all of the conduct that is proscribed by the statute.*

Pacific Frontier, Inc. v. Kaysville City, No. 1:02-CV-129 TC, 2005 WL 1501433, at *11-12 (D. Utah 2005) (unpublished order and memorandum decision quoting, with emphasis added, ACORN v. City of Tulsa, 835 F.2d 735, 740 (10th Cir. 1987)).  [Doc. 12.]

I am not persuaded that it is appropriate to dispose of Plaintiff's claims by means of such a facial challenge at this preliminary juncture.  Pacific Frontier was not decided on the basis of the pleadings alone, but rather on the basis of motions for summary judgment filed after the factual record was developed and the pleadings were amended.  See id. at *1-2. Further, it is an unpublished district court opinion that relies on Tenth Circuit precedent that is more than twenty years old.

A series of recent opinions from our Supreme Court may have significantly narrowed the circumstances under which parties can successfully mount a facial challenge to the

5

constitutionality of a statute or ordinance, even when the First Amendment is at issue.  See United States v. Williams, 128 S. Ct. 1830 (2008); Crawford v. Marion County Election Bd., 128 S. Ct. 1610 (2008); Washington State Grange v. Washington State Republican Party, 128 S. Ct. 1184 (2008).

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records.  Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.

Washington State Grange, 128 S. Ct. at 1191 (internal quotation marks and citations omitted).

For these reasons, the general rule is that "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications."  Washington State Grange, 128 S. Ct. at 1190 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  In other words, "a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" Id. (quoting Washington v. Glucksberg, 521 U.S. 702, 739-40, and n.7 (1997) (Stevens, J., concurring in judgments)).

The Supreme Court has recognized exceptions to this general rule in the First Amendment context, but such exceptions are becoming quite narrow.  The Court's recent

opinions have "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep," before it can be held facially invalid under the overbreadth doctrine. Williams, 128 S. Ct. at 1838 (citing Virginia v. Hicks, 539 U.S. 113, 119-20 (2003); accord Washington State Grange, 128 S. Ct. at 1991 n.6. "In addition to being substantial, the overbreadth must also be real." Faustin v. City and County of Denver, 423 F.3d 1192, 1199 (10th Cir. 2005). Thus, "[t]he overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists" when the law is "taken as a whole." Hicks, 539 U.S. at 121 (quoting New York State Club Assn., Inc. v. City of New York, 487 U.S. 1, 14 (1988)).

The first step in determining whether a statute's overbreadth is both substantial and real is to ascertain whether the statute can be construed narrowly so as to remove the seeming threat to constitutionally protected expression, Hicks, 539 U.S. at 119, because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," Williams, 128 S. Ct. at 1838. Similar considerations apply to facial challenges based on the assertion that a law is unconstitutionally vague. See Faustin, 423 F.3d at 1202. "Speculation and 'hypertechnical theories as to what the statute covers' cannot create vagueness, especially when the statute is 'surely valid in the vast majority of its intended applications.'" Id. (quoting Hill v. Colorado, 530 U.S. 703, 733 (2002)).

At this preliminary juncture, there is a "factually barebones record" from which one can only speculate about whether the ordinance's alleged overbreadth is both substantial and

real.  While the Supreme Court has held ordinances restricting door-to-door canvassing to be unconstitutional as applied to particular groups (such as religious proselytizers or political organizations), see, e.g., Watchtower Bible and Tract Soc. v. Village of Stratton, 536 U.S. 150, 153 (2002), the Court also has left open the possibility that a "narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve . . . important [governmental] interests without running afoul of the First Amendment," Hynes v. May and Council of Oradell, 425 U.S. 610, 616-17 (1976).

       In this case, there is no evidence in the record, nor have the parties cited any language from the ordinance, to suggest that it prohibits or requires a permit for door-to-door canvassing involving non-commercial activities such as religious proselytizing or anonymous political speech.  Indeed, the parties' pleadings and motion papers do not present, much less analyze, the City of Albuquerque's Business Solicitations Ordinance as a whole or as applied to the majority of its intended applications.

       It is also important to note that neither Plaintiff's original pleading nor its proposed *Amended Complaint* assert a cause of action for enforcement of the City of Albuquerque's Business Solicitations Ordinance.  Rather, Plaintiff seeks equitable relief and damages under a common-law theory of public nuisance.  As explained in further detail below, the viability of such a public nuisance claim does not necessarily depend on whether or not the Defendants have violated a municipal ordinance.

For these reasons, the Court determines that a fair resolution of the controversy surrounding the ordinance's constitutionality would benefit from an amendment to the pleadings and further development of the record. The Court will therefore deny Defendant's motion without prejudice insofar as it is based on a facial challenge to the constitutionality of the City's ordinance.

C.     **Plaintiff's Public Nuisance Claim**

This Court extensively discussed the requirements for bringing a common-law nuisance claim in Citizens for Alternatives to Radioactive Dumping v. Cast Transportation, Inc., No. CV 99-321, Doc. 312 (D.N.M. unpublished memorandum opinion and order filed Sept. 30, 2004), aff'd, 485 F.3d 1091 (10th Cir. 2007). In lieu of reiterating these requirements in great detail, the Court will simply incorporate by reference the relevant portions of that prior opinion.

Under New Mexico law, it is still possible to plead a public-nuisance claim against a defendant even though the defendant's activities were "duly authorized" in the sense that the defendant obtained all necessary permits and regulatory approvals before proceeding with those activities. See id. New Mexico courts recognize that even a public-works project that has all the necessary permits and regulatory approvals at its inception may nevertheless result in a nuisance in fact if it is subsequently "operated or maintained" in a manner that is not duly authorized. See City of Albuquerque v. State ex rel. Village of Los Ranchos de Albuquerque, 111 N.M. 608, 614, 808 P.2d 58, 64 (Ct. App. 1991) (hereinafter City of Albuquerque I") (citing State ex rel. N.M. Water Quality Control Comm'n v. City of Hobbs,

86 N.M. 444, 525 P.2d 371 (1974)); accord State of N.M. ex. rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque, 119 N.M. 150, 164, 889 P.2d 185, 199 (1994) (hereinafter "City of Albuquerque II").  In that context, the defense of due authorization "may or may not prevail depending on the facts of the situation."  City of Albuquerque II, 119 N.M. at 165, 889 P.2d at 200.

Thus, even if one assumed that the existing or proposed Defendants had obtained a permit under the municipal ordinance at issue in this case, or that such a permit was not required in order to authorize some form of door-to-door solicitation for commercial purposes in the City of Albuquerque, Plaintiff could still prevail on a claim that Defendant's activities result in a "public nuisance in fact" if it can be shown "that the project is, or will be, conducted or maintained in a manner contrary to law."  City of Albuquerque I, 111 N.M. at 615, 808 P.2d at 65.  In determining whether Plaintiff can make such a showing at this preliminary juncture, the Court is required to construe all well-pleaded allegations in the light most favorable to Plaintiff and draw all reasonable inference in its favor.  When construed in this light, Plaintiff's pleadings appear to challenge an existing or ongoing activity (as evidenced by the two murders) with respect to the manner in which the business in question is being operated or maintained.

New Mexico law recognizes a cause of action to abate or enjoin a public nuisance under this type of situation.  Whether Plaintiff can actually prove the elements of such a claim, as opposed to merely pleading them, requires further factual development.

Accordingly, Defendant's motion to dismiss is denied without prejudice as it pertains to Plaintiff's public nuisance claim.

### D.     Plaintiff's Claim for Negligent Hiring, Retention, and Supervision

Plaintiff also proposes to add a claim for negligent hiring and supervision to its *Amended Complaint*.  Defendant contends that such an amendment would be futile because the alleged injuries to Plaintiff are not a foreseeable result of Defendant's alleged negligence. To the extent that any private individuals are injured by such negligence, Defendant contends that Plaintiff is not the proper party to sue on their behalf.

While the elements of a claim for negligent hiring and supervision under New Mexico law are relatively straightforward, see Medina v. Graham's Cowboys, Inc., 113 N.M. 471, 473, 827 P.2d 859, 861 (Ct. App. 1992), the parties have not cited any New Mexico authorities addressing whether or under what circumstances a municipality may bring such a claim in the context presented here.  On a more general level, other courts have noted that a municipality's attempt to bring this type of claim may raise an issue of *standing* as well as an issue of *causation*.  See Cincinnati v. Beretta U.S.A. Corp., 768 N.E.2d 1136, 1147-48 (Ohio 2002) (citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268-69 (1992)).  New Mexico courts also have noted that causation, and more particularly the concept of foreseeability, is an important component of a claim for negligent hiring and supervision.  See, e.g., Pittard v. Four Seasons Motor Inn, Inc., 101 N.M. 723, 730, 688 P.2d 333, 340 (Ct. App. 1984).

11

Both the issue of causation and the issue of standing reflect the concern that there be "some direct relation between the injury asserted and the injurious conduct alleged" so that defendants are not required to litigate a number vague, doubtful, and duplicative claims from plaintiffs who "complained of harm flowing merely from the misfortunes visited upon a third person." Holmes, 503 U.S. at 269. To answer such concerns, municipalities asserting these types of negligence claims may be limited to seeking damages for their own injuries rather than for the private harms inflicted upon particular citizens. See Beretta U.S.A. Corp., 768 N.E.2d at 1149. In addition, municipalities may be required to show a specific type of injury that is distinguishable from the general costs of operating a government and providing ordinary municipal services such as policing and firefighting. See id.

In the proposed *Amended Complaint*, Plaintiff has asserted such a particularized and direct injury in the form of "loss of permit and tax revenue, and law enforcement and investigation expenses" caused by Defendant's alleged negligent hiring, retention, and supervision. [Doc. 24-2, at 7.] While it remains to be seen whether Plaintiff can muster any admissible evidence to show that these alleged injuries are sufficiently direct and particularized, the Court is required to assume they are true and draw all reasonable inference in Plaintiff's favor at this preliminary stage of the litigation. The Court will therefore grant Plaintiff leave to add a claim for negligent hiring, retention, and supervision to its *Amended Complaint*.

12

E.      **Addition or Substitution of New Defendants**

Finally, Plaintiff proposes to add five new defendants to the *Amended Complaint*. Three of these proposed new defendants are alleged to be corporations: Integrity Sales, LLC; Prestige Sales, LLC; and Magazine Fulfillment Services, Inc.  Robert Spruell, whom Plaintiff also proposes to add as a defendant, is alleged to be the sole owner and general manager of the four corporations listed above, as well as the owner and manager of the existing Defendant, Integrity Program, LLC.  The final defendant whom Plaintiff proposes to add to this litigation is Nicholas Rees, who is alleged to have been a supervisor of one of the corporate defendant's sales crews in Albuquerque, New Mexico in December 2007, when the two murders occurred.

Defendant Integrity Program LLC contends that the motion to add the above named individuals and entities would be futile because Plaintiff has not specifically pleaded all the requirements for "piercing the corporate veil" and holding them liable for torts committed by the existing Defendant or its agents.   Plaintiff's claims against the proposed individual Defendants, however, are not contractual in nature, and there has been no showing that New Mexico law prohibits Plaintiff from bringing such claims against an individual supervisor or manager rather than, or in addition to, a corporate employer.  See, e.g., Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 121 N.M. 646, 653, 916 P.2d 1313, 1320 (1996) (citing Ortiz v. New Mexico State Police, 112 N.M. 249, 250, 814 P.2d 117, 118 (Ct. App. 1991)).  The general rule is that "an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal." Kreischer v. Armijo, 118 N.M.

671, 673, 884 P.2d 827, 829 (Ct. App. 1994).  Further, "An individual or entity may be held liable in tort for negligent hiring, negligent supervision, or negligent retention of an employee even though it is not responsible for the wrongful acts of the employee under the doctrine of respondeat superior." Los Ranchitos v. Tierra Grande, Inc., 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct. App. 1993).

To the extent that Plaintiff's amended pleading seeks to hold the proposed defendants liable under a theory of "piercing the corporate veil," Plaintiff also pleads the necessary elements of (1) instrumentality or domination, (2) improper purpose, and (3) proximate causation.  See Scott v. AZL Resources, Inc., 107 N.M. 118, 121, 753 P.2d 897, 900 (1988).  To invoke this theory in a pleading, it is not necessary to use a particular phrase or term of art.  See Garcia v. Coffman, 1997-NMCA-092, ¶ 13, 124 N.M. 12, 946 P.2d 216.

Here Plaintiff pleads the first element by alleging facts supporting a reasonable inference that the corporate defendants functioned under the domination and control of Mr. Spruell, or under a unity of interest and ownership with respect to finances as well as policy and business practices.  See id. ¶ 18.  Plaintiff pleads the second requirement by alleging facts concerning undercapitalization, lack of a legitimate business purpose for each corporate entity, and Mr. Spruell's use of the corporate entities to carry out unjust acts.  See id. ¶ 22. Plaintiff pleads the third element by alleging facts to support a reasonable inference that its injuries were proximately caused by the use of the corporate entities to perpetrate such unjust acts.  See id. ¶ 24.

For all of the above reasons, the Court will grant Plaintiff leave to add the new Defendants listed in the proposed *Amended Complaint*, with one exception:  Robert Spruell may not be added as an individual Defendant because the parties report that he is now deceased.  The Court will instead permit Plaintiff to substitute the estate of Mr. Spruell as a Defendant when the information necessary to do so is obtained.  To the extent the parties provide any written status reports to the assigned Magistrate Judge on this issue or the related issue of extending the deadlines set forth in the *Scheduling Order* [Doc. 17], a copy of such reports shall also be provided to the assigned District Judge.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is denied without prejudice, and Plaintiff's motion to amend its complaint is granted.

**IT IS THEREFORE ORDERED** that Defendant *Integrity Program, LLC's Motion to Dismiss or, in the Alternative, Motion to Strike* [Doc. 6] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to File Amended Complaint* [Doc. 24] is **GRANTED**.

**SO ORDERED,** this 24th day of June, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

15